Exhibit A

# ILLINOIS RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT

| | |
|---|---|
| Seller: Auto Resources Glendale Heights, Inc. d/b/a Byrider<br>Address: 800 North Avenue<br>Glendale Heights, IL 60139 | Contract Date: 3/4/2025<br>No.: [redacted] |
| Buyer: TAMEKA MONIQUE RAY<br>Address: 611 23RD AVE, BELLWOOD, IL 60104 | Co-Buyer:<br>Address: N/A |

Description of Used Vehicle Purchased: 2013 HYUNDAI TUCSON KM8JU3AC7DU662655

Description of Trade-In: N/A

## FEDERAL TRUTH IN LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 2,500.00 |
|---|---|---|---|---|
| 24.989 % | $ 9,226.74 | $ 15,202.70 | $ 25,429.44 | $ 26,929.44 |

**Your Payment Schedule will be:**

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| 4 | 250.00 | Bi-Weekly equal deferred down payments due on 03/19/2025, 04/02/2025, 04/16/2025, 04/30/2025 |
| 98 | 249.28 | Bi-Weekly beginning 5/14/2025 |

**Security:** You are giving us a security interest in the Vehicle purchased. ☒ If checked, you are entering into a Wage Assignment Agreement to secure payment of this Contract.

**Late Charge:** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of N/A% of the payment due on installments in excess of $ N/A or $ N/A on installments of $ N/A or less.

**Prepayment:** If you pay all or any part of the Contract early, you will not have to pay a penalty.

See the Terms and Conditions section of this Contract for additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**Illinois law requires that this Vehicle will be free of a defect in a power train component for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. "Power train component" means the engine block, head, all internal engine parts, oil pan and gaskets, water pump, intake manifold, transmission, and all internal transmission parts, torque converter, drive shaft, universal joints, rear axle and all rear axle internal parts, and rear wheel bearings. You (the consumer) will have to pay up to $100 for each of the first 2 repairs if the warranty is violated.**

**Attention customer: sign here only if the seller has told you that this Vehicle has the following problem or problems and you agree to buy the Vehicle on those terms:**

1. N/A
2. N/A
3. N/A

N/A
Buyer Date

N/A
Co-Buyer Date

Tue Mar 4 15:54:10 EST 2025

TR N/A 

F4500-IL
© 2023 Byrider Franchising, LLC
Rev. 2/14/2024
[redacted]

[redacted]

## Itemization of Amount Financed

| | |
|---|---|
| **Cash Price of Vehicle** (Including sales tax of $ 1,006.67 ) | $ 14,994.67 |
| Cash Down Payment | $ 1,500.00 |
| Deferred Down Payment | $ 1,000.00 |
| i. Total Cash/Deferred Down Payment | $ 2,500.00 |
| ii. Trade-In Allowance | $ N/A |
| iii. Less: Amount Owing | $ N/A |
| Payoff To: N/A | |
| iv. Net Trade-In (ii. minus iii.) | $ N/A |
| v. Net Cash/Trade-In (i. + iv.) | $ 2,500.00 |
| vi. Amount to Finance line v. (if v. is negative) | $ 0.00 |
| **Down Payment** (v. – disclose as $0 if negative) | $ 2,500.00 |
| **Unpaid Balance of Cash Price** | $ 12,494.67 |
| **To Public Officials – Filing Fees** | $ 316.00 |
| **To Public Officials – Taxes** | $ 0.00 |
| ***Other Charges:** | |
| To Seller for Vehicle Service Contract | $ 1,999.00 |
| To **Seller** for **Documentary Fee** | $ **358.03** |
| To **Seller** for **Optional ERT Fee** | $ **35.00** |
| To N/A for N/A | $ N/A |
| To N/A for N/A | $ N/A |
| To N/A for N/A | $ N/A |
| To N/A for N/A | $ N/A |
| To N/A for N/A | $ N/A |
| To N/A for N/A | $ N/A |
| To N/A for N/A | $ N/A |
| **Total Other Charges/Amounts Paid to Others on Your Behalf** | $ 2,708.03 |
| *Seller may keep a portion of any these amounts. | |
| **Unpaid Balance of Cash Price plus Total Other Charges/Amounts Paid to Others** | $ 15,202.70 |
| **Amount Financed** | $ 15,202.70 |

DOCUMENTARY FEE. A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 2020, WAS $300. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $300, WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.


© 2023 Byrider Franchising, LLC

**Additional Protections:** The types of voluntary protection plans listed below are optional. Purchasing a voluntary protection plan is not required to obtain credit, and is not a factor in the credit decision, terms of credit, or terms of sale of the Vehicle. You will not receive these voluntary protections unless you sign and agree to pay the additional cost. Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s), which are issued by the providers of those products and explain the terms and conditions of each product. If no coverage or charge is given for an item, you have declined any such coverage we offered.

| ☒ Vehicle Service Contract | ☐ GAP Waiver or GAP Coverage | ☐ GPS Subscription |
|---|---|---|
| Term 36 months / 36000 miles | Term N/A | Term N/A |
| Price $ 1,999.00 | Price $ N/A | Price $ N/A |
| Coverage Engine, Transmission, Front Wheel | Coverage N/A | Coverage N/A |
| Drive, Rear Wheel Drive as stated in Vehicle | N/A | N/A |
| Service Contract | N/A | N/A |

If you default, you agree that we can claim benefits under any of these voluntary protection plans to the extent allowable under applicable law, and terminate them to obtain refunds of unearned charges to reduce what you owe or repair the Vehicle. If the Vehicle is a total loss because it is damaged or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

[signature] 3/4/25 N/A

Buyer's Signature Date Co-Buyer's Signature Date

## TERMS AND CONDITIONS

**AGREEMENT:** In this Retail Installment Contract and Security Agreement ("Contract"), the words "you" and "your" refer to each Buyer named above. The word "Buyer" may mean one or more persons named above who are purchasing the Vehicle from the Seller and financing the purchase by this Contract. The words "we," "us," and "our" refer to the Seller (the creditor) named above, or any other party to which this Contract is assigned. This Contract provides for the financing over time of your purchase of the Vehicle described above. The word "Vehicle" means all motor vehicles and/or services purchased by the Buyer from the Seller, including the usual accessories and attachments. The "Total Sale Price" shown above is the total amount you will pay for your purchase on a credit basis. The amount you would pay if you purchased the Vehicle for cash is shown above as the "Cash Price." By signing this Contract you agree to purchase the Vehicle on credit and you agree to pay the Total Sale Price according to the terms provided in this Contract.

You agree that your name and address as shown on page 1 are your exact legal name and current principal address. You also agree that your telephone number and place of employment reflected on your credit application are current and accurate. You must provide us with prompt notice of any change in your name, address, telephone number, or place of employment.

**PROMISE TO PAY:** You promise to pay to Seller at its address shown above the Cash Down Payment and the Amount Financed, plus Finance Charges on the unpaid portion of the Amount Financed at the Contract Rate of 24.990 % shown above on the unpaid portion of the Amount Financed, according to the Payment Schedule shown above and the terms of this Contract, until all sums due under this Contract are paid in full. Finance Charges will begin to accrue under this Contract on the Contract Date. Finance charges accrue on an actual/365 day basis. You also agree to pay this Contract according to the payment schedule and late charge provisions shown in the Federal Truth-in-Lending Disclosure; or a greater amount. You agree that any payment made that exceeds the amount shown in the Amount of Payments box will be applied first to accrued, unpaid finance charges, and then to reduce the principal amount you owe, unless you and we agree otherwise in writing. As part of the cash down payment for your Contract, you promise to pay us the full amount of the deferred down payments as reflected in your Payment Schedule and your Itemization of Amount Financed. If this Contract is signed by multiple Buyers, each of you is individually and jointly responsible for all the agreements in this Contract. You are still required to pay this Contract even if we release our security interest from any Vehicle securing this Contract. Any unfulfilled Contract obligations you initially owe the Seller will be assigned each time this Contract itself is assigned. These obligations include your obligation to pay the unpaid portion of the cash down payment, deferred down payment, and scheduled payments reflected in the Contract. All rights and remedies initially held by the Seller under this Contract will also be assigned each time the Contract itself is assigned. Before assignment, the terms "we," "us," and "our" in the Contract refer to the Seller identified above. After assignment, the terms "we," "us," and "our" in the Contract will refer to any entity that has acquired and taken assignment of the Contract. Your Contract obligations or our rights and remedies may not be separated from each other, or denied to any assignee, based on any assignment of the Contract.


© 2023 Byrider Franchising, LLC


[redacted]

**SIMPLE FINANCE CHARGE CONTRACT:** Finance Charges on this Contract are calculated using the 'simple interest' methodology. We do not intend to charge or collect any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. The Finance Charge, Total of Payments, and the Amount of Payments as shown in the Payment Schedule under the Federal Truth in Lending Disclosure Statement, above, may differ from the amount you will ultimately have to pay if your payments are not received on their exact due dates. For example, making your payment before its scheduled due date will reduce the amount of Finance Charges owed for that month and increase the portion of your payment applied to the Amount Financed. This will result in your final payment being smaller, while late payments will increase the amount of Finance Charges owed during the month and increase your final payment. Your final payment may also be different from the amount shown in the Payment Schedule if the Seller figured the payment schedule assuming equal monthly payment periods and other factors as are permitted under the Federal Truth in Lending Act. Your promise to pay requires you to pay the final payment on the date due even if it is different from the amount shown above. You understand that we (or our affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that you buy through us or our affiliate.

**DISCLOSURE OF 36% RATE CAP**

**A retailer shall not contract for or receive charges exceeding a 36% annual percentage rate on the unpaid balance of the amount financed for a retail installment contract, as calculated under the Illinois Predatory Loan Prevention Act (PLPA APR).**

**Any retail installment contract with a PLPA APR over 36% is null and void, such that no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the retail installment contract.**

**The annual percentage rate disclosed in any retail installment contract may be lower than the PLPA APR.**

3/4/25

**Buyer's Signature** **Date**

N/A

**Co-Buyer's Signature (if applicable)** **Date**

**SECURITY INTEREST:** To secure your obligations, you give us a "first priority" security interest in the Vehicle, all accessions, attachments, accessories and equipment placed in or on the Vehicle and all proceeds of the Vehicle. You also agree to give us a security interest in all moneys or goods received for the Vehicle, service and other contracts we finance. You also give us a security interest in all proceeds of service or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts. The security interest secures payment of all amounts you owe in this Contract and performance of your other agreements in this Contract. The payment secured to us by the Vehicle and its proceeds includes, without limitation, your payment to us of the cash down payment, any deferred down payment, and any scheduled payment reflected in the Contract. You agree a "first priority" security interest is a security interest before any other party's lien, claim, interest or right in or to the Vehicle. You will make sure the title shows our security interest (lien) in the Vehicle. You will not grant anyone else a security interest, lien or any other claim to the Vehicle without our express prior written consent. We reserve our right to setoff proceeds from insurance, service, or other contracts and excess amounts of estimated official fees and taxes that we may receive against the amount you owe under the Contract, as the law allows. You agree to defend our interests in the Vehicle against claims made by others, and you agree to take all necessary steps to keep our claim to the Vehicle ahead of anyone else. If the box on page 1 is checked, you are also entering into a separate Wage Assignment Agreement that secures your payment under this Contract.

**MILITARY ANNUAL PERCENTAGE RATE STATEMENT:** Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account).

If you are a member of the active military, or a spouse or dependent of a member of the active military, and to the extent that your Contract is subject to the provisions of the Military Lending Act, 10 U.S.C. § 987 and its implementing regulations, 32 C.F.R. § 232.1, et seq., nothing contained in this Contract is intended to waive your rights or protections under that law.

**LATE CHARGE:** You agree to pay the late charge as shown in the Federal Truth In Lending Disclosure Statement.

**RETURNED PAYMENT CHARGE:** If you make any payment required by this Contract with a check, negotiable instrument, electronic payment, or other payment device that is returned or dishonored, you agree to pay the maximum returned payment fee permitted by applicable law. If not paid when due, we may add this fee to the unpaid balance of the Contract.


© 2023 Byrider Franchising, LLC

**EXPEDITED PAYMENT FEE:** You are allowed, but not required, to use an expedited payment method for making Contract payments. If you do, we will not charge a separate fee to you for using any expedited payment method, but a third party service provider may require you to pay the provider a fee for these expedited payment services. If this happens, we will not receive or keep any part of the fees the service provider may charge you for these expedited payment services. You understand and agree that we accept payments using methods that will not require you to pay a separate fee.

**KEYS:** You agree that we may keep a copy of the keys to the Vehicle until this Contract is paid in full.

**PREPAYMENT OF AMOUNT OWED:** You may prepay all amounts due under this Contract without penalty at any time. If you prepay, payments will be applied first to accrued, unpaid finance charges, and then to reduce the principal amount you owe. If you make a partial prepayment, there will be no changes in the due dates of your monthly payments. Any partial prepayment will not excuse any later scheduled payments until you pay in full.

**USE OF VEHICLE:** You agree to pay us all you owe under this Contract even if the Vehicle is damaged, destroyed, or missing. You agree to take any and all actions necessary to promptly title and register the Vehicle, including but not limited to execution of necessary documentation and payment of any amounts owed by you to a state or local agency required for you to title or register the Vehicle. You agree not to remove the Vehicle from the United States or sell, rent, lease, or transfer any interest in the Vehicle without our prior written consent. You agree to keep it free from the claims of others and not to expose the Vehicle to abandonment, misuse, seizure, confiscation, or involuntary transfer. You agree to maintain, service, and repair the Vehicle and to not use it in any way that violates the law. You agree to keep the Vehicle at your address as shown on page 1 of this Contract. You agree to provide us with written notice at least 30 days prior to relocating to a different state than the one shown on page 1 of this Contract. You agree not to add to the Vehicle any accessories, equipment or any other property in which any person has an ownership or security interest. If we pay any repair bills, storage bills, taxes, fines, or charges on the Vehicle, you agree to repay the amount when we ask for it. If you do not pay these amounts, they will be added to the outstanding balance of the Contract. You otherwise agree to pay all taxes and assessments on the Vehicle as they become due. You agree not to use the Vehicle as a residence or dwelling. You also agree not to use the Vehicle for any commercial use or agricultural use not related to personal, family, or household purposes. You must notify us within 24 hours of any loss or damage to the Vehicle, and you also agree to provide us with reasonable access to inspect the Vehicle. You will also allow us to retain a copy of the keys to the Vehicle.

**VEHICLE INSURANCE:** You agree to have insurance for the term of this Contract against loss or damage to the Vehicle, and at all times it must cover our interest in the Vehicle by naming us as lender loss payee. You may obtain physical damage insurance on the Vehicle from a person of your choice that is authorized to sell such insurance and is acceptable to us. The collision and comprehensive coverage deductibles may not exceed $ 500.00 . If the Vehicle is lost or damaged, you agree that, in our sole discretion, we may use any insurance settlement to reduce what you owe us or to repair the Vehicle. You also agree that if the insurance proceeds do not cover the amounts you still owe us, you must pay the difference to us.

**COLLATERAL PROTECTION INSURANCE:** Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**DEFAULT:** You will be in default if any of the following occurs, unless prohibited by law: (i) You fail to make any payment under this Contract when due, including any cash down payment, deferred down payment, and scheduled payment you owe us under the Contract; (ii) You fail to do anything else you have agreed to do in this Contract; (iii) Any statement or representation you made in your credit application is untrue or incorrect; (iv) You fail to provide us: (a) with proof of employment, income, residence, insurance or repair to credit history; (b) personal references; or (c) other information relating to the credit transaction within 3 business days after our written request for this information; (v) You fail to title and register the Vehicle within 90 days of the Contract Date; (vi) We are unable to obtain and perfect a first priority security interest in the Vehicle; (vii) You die, become incompetent, generally fail to pay your debts as they become due, or become the subject of a voluntary or involuntary bankruptcy proceeding; (viii) Any judgment, levy, attachment, writ of garnishment or other similar order is entered against you or the Vehicle; (ix) Any police or governmental agency seizes or impounds the Vehicle or starts forfeiture proceedings against the Vehicle; or (x) Either our security interest in the Vehicle or our ability to enforce our security interest in the Vehicle is impaired.

If a default happens with respect to any Buyer, we reserve the right to exercise our rights against any or all of the persons listed as a Buyer.

Tue Mar 4 15:54:10 EST 2025

TR N/A


© 2023 Byrider Franchising, LLC


[redacted]

**RIGHTS AFTER DEFAULT:** If you are in default, we may declare all unpaid sums immediately due and payable and exercise any other available remedies allowed by law. The amount you will owe will be the unpaid part of the Amount Financed, the earned and unpaid part of the Finance Charge, any late charges, and all other amounts due because you defaulted. These amounts will earn finance charges from the date you are required to pay us at the Contract Rate described in the Promise to Pay section of this Contract. Additionally, we may immobilize, disable, or take possession of (repossess) the Vehicle if we do so peacefully and the law allows it, subject to any right you may have to reinstate the Contract. If we take the Vehicle, any accessories, equipment, and replacement parts will stay with the Vehicle. If any personal items are in the Vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

If we repossess the Vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the Vehicle. You may also have a right to reinstate the Contract. If you do not redeem before sale, we will sell the Vehicle in a commercially reasonable manner. We will send you a written notice of sale before selling the Vehicle. We will apply the money from the sale, less allowed expenses related to the repossession, repair, storage and sale of the Vehicle, to the amount you owe. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us, unless prohibited by applicable law. Except when otherwise prohibited by law, you are responsible for any deficiency if the proceeds do not satisfy the amounts you owe under this Contract. We may sue you for these additional amounts. If you do not pay this amount when we ask, we may charge you interest at the highest lawful rate until you pay.

We may delay or refrain from enforcing any of our rights under this Contract without losing them. For example, we may extend the time for making some payments without extending the time for making others. By deciding not to exercise a right with respect to an event of default, we do not give up our right to consider an event a default if it happens again in the future. You also expressly waive demand for payment, notice of non-payment, presentment, notice of dishonor, protest, notice of protest, notice of intent to accelerate, and notice of acceleration.

**ATTORNEY'S FEES AND COURT COSTS:** In the event of default, Buyer agrees to pay court costs and Seller's reasonable attorney's fees for referral to an attorney who is not the Seller's salaried employee.

**WARRANTIES:** A limited warranty is included with your vehicle purchase. See your separate limited warranty agreement for additional details. State law may also provide you with certain warranty rights.

**GOVERNING LAW:** The terms of this Contract shall be governed by the law of the State of the Seller, as shown on page 1, except as provided in the Arbitration Provision below. If any provision of this Contract is not enforceable, the other terms will remain a part of this Contract. You hereby authorize us to correct any clerical errors or omissions made in completing this Contract and other documents related to this transaction, provided that any corrections we may make will not change any of the essential provisions or material terms of this Contract.

**LIQUIDATED DAMAGES:** If we allow you to return the Vehicle and cancel your obligations under the Contract, other than because your credit history or credit references are unacceptable, you agree that we will incur damages in an amount that is difficult for you and us to predict as of the Contract date. Unless prohibited by applicable law, you agree that we, if we allow you to return the Vehicle and cancel your Contract obligations, may retain as damages any property and money that you used as a down payment.

**COMMUNICATION CONSENT:** You agree that we may monitor and record telephone calls regarding your account to assure the quality of our service or for other reasons. You agree that we may call you, using an automatic telephone dialing system or otherwise, leave you a voice, prerecorded, or artificial voice message, or send you a text, e-mail, or other electronic message for any purpose related to the servicing and collection of your accounts with us (each a "Communication"). You agree that we may send a Communication to any telephone numbers, including cellular telephone numbers, or e-mail addresses you provide to us at any time. You acknowledge and confirm that you have the authority to provide the consent because you are either the subscriber of the telephone number(s) or you are the non-subscriber customary user who has authority to provide the consent. You also agree that we may include your personal information in a Communication. You agree that we will not charge you for a Communication, but your service provider may. In addition, you understand and agree that we may always communicate with you in any manner permissible by law.

**ASSIGNMENT OF CONTRACT:** You agree that we may, at our option, assign your payment obligations under this Contract to anyone we choose. We cannot assign our obligations to perform services financed under this Contract. You agree that the assignee will have all of our rights and remedies under this Contract and that you will pay to the assignee all that is still owed under this Contract, at the times and in the amounts provided in the Contract.

**ARBITRATION AGREEMENT**

**This Arbitration Agreement does not apply if the Buyer is covered by the Military Lending Act.**

> **A. Mandatory Arbitration:** Unless otherwise stated in this agreement, any "Dispute" between the Parties shall, at the election of Buyer, Seller or Seller's Assignee ("the Parties"), be resolved by a neutral, binding arbitration, and not by a court of law. This procedure includes any Dispute over the interpretation, scope, or validity of this Contract, the arbitration agreement or the arbitrability of any issue, with the sole exception to the validity of the Parties' waiver of any right to bring a class action or to


© 2023 Byrider Franchising, LLC

participate in a class action as provided for under paragraph F, or the Parties' waiver of any right to bring a non-class representative action or to participate in a non-class representative action as provided for under paragraph G, shall be solely determined by the appropriate court, if necessary. The arbitration agreement applies to the Parties, including their respective employees or agents, as to all matters which arise out of or relate to this Contract or are in any way connected with the purchase and sale or financing of the Vehicle, or any resulting transaction or relationship.

**B. Dispute:** The term "Dispute" means any action, dispute, claim, or controversy of any kind arising out of, in connection with or in any way related to the Contract, the sale of the Vehicle, financing, contracts, origination, servicing, service agreements, collection, reporting, or any other aspect whatsoever of the past, present, or future relationship or conduct of the Parties. The term "Dispute," includes without limitation: claims under federal or state consumer protection laws; claims in tort or contract; claims under statutes or common law; claims at law or in equity; other past, present or future claims, counterclaims, crossclaims, third party claims, interpleaders or otherwise; and any claim relating to the interpretation, applicability, enforceability or formation of this arbitration agreement, including, but not limited to, any claim that all or any part of this arbitration agreement, except paragraph F or paragraph G, is void, voidable or unconscionable.

**C. Facts about Arbitration:** Arbitration is a process in which a neutral arbitrator decides a dispute instead of a judge or jury. Each side has an opportunity to present some evidence to the arbitrator. A Party's ability to discover things may be limited. Arbitration proceedings are private and less formal than court trials. Other rights that the Parties might have in court might not be available in arbitration. An arbitrator issues an award. A court may then enforce the award like a court judgment. Courts rarely overturn an arbitrator's award.

**D. Rules and Procedures:** Written notice shall be given for any Dispute. Such notice shall be given by both first class mail and certified mail, return receipt requested. Notice to the Buyer shall be sent to the Buyer's address in the Contract. Notice to the Seller or the Seller's Assignee shall be sent to the address in paragraph N of this arbitration agreement. The Party initiating the arbitration shall set forth in the notice the nature and factual basis of the Dispute, the names and addresses of all other Parties, the amount involved, and the specific relief requested. The Party responding to such a notice may answer and similarly set forth any counter-Disputes. The arbitration will be conducted by one neutral and impartial arbitrator mutually agreed upon by the Parties. The arbitrator shall be an attorney or retired judge. In the event the Parties cannot agree on an arbitrator, the Parties agree that an arbitrator may be appointed by a court in accordance with the Federal Arbitration Act (9 U.S.C. §1, et seq.). The arbitrator may conduct all necessary preliminary proceedings, provide for the exchange of information and/or discovery, and set the time, date and place of any hearing, after reasonable notice to and consultation with the Parties. The award shall be issued without a written opinion no later than 30 days from the date any hearing is completed. The parties agree that the arbitration proceedings and all related documents and discovery shall be kept confidential unless disclosure is required by law.

**E. Standards and Law:** The Parties agree that the Contract and purchase of the Vehicle involve interstate commerce and that this arbitration agreement is governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 through 16 as amended ("FAA"). The arbitrator shall strictly apply applicable substantive law and applicable statutes of limitation consistent with the FAA and shall honor claims of privilege recognized at law.

**F. Class Action Waiver:** The Parties agree to give up any right they may have to bring a class action lawsuit or class arbitration, or to participate in either as a claimant. The Parties agree to give up any right to consolidate or join any arbitration proceeding with the arbitration of others. To the extent the Parties are permitted to file small claims under paragraph K, the Parties agree that any small claim may only be brought on an individual basis and that no small claim may be brought on a class or representative basis. The Parties agree that the waiver of rights in this paragraph F is necessary to ensure any Dispute is arbitrated in an informal and expedited fashion and the exercise of such rights would be contrary to the Parties' intention to resolve Disputes informally and expeditiously.

**G. Representative Action Waiver:** The Parties give up the right to bring a non-class representative lawsuit or non-class representative arbitration (such as serving as a private attorney general or seeking a public injunction), or to participate in either as a claimant, in any jurisdiction in which such procedure might be permitted. However, if it is determined that you have a non-waivable right to seek a public injunction, to act as a private attorney general, or to assert a claim in a representative capacity, you may pursue such relief in court. If such relief is sought, all other Disputes must be adjudicated in arbitration first, and any claim for such relief in court must be stayed until the arbitration of other Disputes is completed. The Parties agree that the waiver of rights in this paragraph G is necessary to ensure any Dispute is arbitrated in an informal and expedited fashion and the exercise of such rights would be contrary to the Parties' intention to resolve Disputes informally and expeditiously.

**H. Punitive Damage Waiver:** The Parties waive any right to seek or recover punitive and/or exemplary damages in any Dispute. No arbitrator shall have the power or authority to award punitive and/or exemplary damages.

**I. Fees and Costs:** Unless otherwise agreed, we shall pay all of the arbitrator's fees and expenses up to the amount of $1,500, after which the Parties shall share equally the fees and expenses of the arbitrator; however, if the chosen forum or applicable law requires us to advance all arbitration fees, we shall do so. The Parties shall be responsible for their own attorneys' fees associated with any arbitration, unless otherwise allowed for under applicable substantive law and awarded by the arbitrator.

Tue Mar 4 15:54:10 EST 2025

TH ______ N/A ______ 

F4500-IL
© 2023 Byrider Franchising, LLC
Rev. 2/14/2024
[redacted]

[redacted]

**J. Self-Help:** Notwithstanding this arbitration agreement, the Parties retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the Dispute by the arbitrator. No Party waives the right to elect arbitration of a Dispute by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

**K. Exceptions:** The Parties agree that this arbitration agreement is not applicable to "small claims" meaning those claims that either Party is entitled to file and maintain in an appropriate small claims court or any action where the total amount in controversy is no greater than $15,000, including any claims for attorney's fees and non-monetary relief.

**L. Severability:** If it is determined that any paragraph or provision in this Arbitration Agreement is illegal, invalid, or otherwise unenforceable, such illegality, invalidity or unenforceability shall not affect the other paragraphs and provisions of this Arbitration Agreement. The remainder of this Arbitration Agreement shall continue in full force and effect as if the severed paragraph or provision had not been included. Notwithstanding this severability provision: (1) if you bring or participate in a class action and a court of competent jurisdiction determines the Class Action Waiver in paragraph F to be illegal, invalid, or otherwise unenforceable, the Parties agree that paragraph F shall not be severed and that this Arbitration Agreement shall be void in its entirety; (2) if you bring or participate in a non-class representative action and a court of competent jurisdiction determines the Representative Action Waiver in paragraph G to be illegal, invalid, or otherwise unenforceable, the Parties agree that paragraph G shall not be severed and that this Arbitration Agreement shall be void in its entirety. For the avoidance of doubt, if you bring an individual non-representative action and a court of competent jurisdiction determines the Class Action Waiver in paragraph F or the Representative Action Waiver in paragraph G to be illegal, invalid, or otherwise unenforceable, such illegality, invalidity or unenforceability shall not affect the other paragraphs and provisions of this Arbitration Agreement, and the remainder of this Arbitration Agreement shall continue in full force and effect as if the severed paragraph or provision had not been included.

**M. Survival of Arbitration Agreement:** This arbitration agreement will survive and continue in full force and effect notwithstanding cancellation, termination, amendment, payment in full, discharge in bankruptcy, or other expiration or conclusion of the Contract or any other contract or transaction between the Parties, unless otherwise agreed in writing. In addition, Buyer understands and acknowledges that the rights and responsibilities afforded to Seller under this arbitration agreement survive any assignment of the Contract by Seller and that Seller and/or the Seller's assignee can enforce this arbitration agreement in the event a Dispute arises after the assignment of the Contract.

**N. Right to Reject Arbitration:** If you do not want this arbitration agreement to apply, you may reject it by mailing a written notice to us c/o Byrider Franchising, LLC, 12802 Hamilton Crossing Blvd., Carmel, Indiana 46032 Attn: VP Franchise Operations that describes the Contract and states that you are rejecting the arbitration agreement. A rejection notice is only effective if it is signed by each Buyer, and the envelope that the rejection notice is sent in is postmarked no more than 10 calendar days after the date of the Contract. If you reject this arbitration agreement, it will not affect any other provisions of the Contract or your obligations under the Contract. If you do not properly reject this arbitration agreement, it will be effective as of the date of the Contract.

**FOR ALL DISPUTES COVERED BY THIS ARBITRATION AGREEMENT, THE PARTIES HAVE AGREED TO WAIVE THEIR RIGHT TO A TRIAL BY JURY, THEIR RIGHT TO PARTICIPATE IN CLASS AND/OR REPRESENTATIVE ACTIONS, AND THEIR RIGHT TO SEEK PUNITIVE AND/OR EXEMPLARY DAMAGES. EXCEPT FOR DISPUTES AND CLAIMS NOT SUBJECT TO THIS ARBITRATION AGREEMENT, ARBITRATION SHALL BE IN PLACE OF ANY CIVIL LITIGATION IN ANY COURT AND IN PLACE OF ANY TRIAL BY JURY.**

**THE TERMS OF THIS ARBITRATION AGREEMENT AFFECT YOUR LEGAL RIGHTS. IF YOU DO NOT UNDERSTAND ANY TERMS OF THIS ARBITRATION AGREEMENT OR THE COST, ADVANTAGES OR DISADVANTAGES OF ARBITRATION, SEEK INDEPENDENT ADVICE BEFORE SIGNING THIS CONTRACT. BY SIGNING THIS CONTRACT, YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY EACH OF THE PROVISIONS, COVENANTS AND STIPULATIONS SET FORTH ABOVE.**

**ASSIGNMENT:** This Contract is assigned to N/A,
the Assignee, phone N/A. This assignment is made under the terms of a separate agreement.

Seller: By________________________
Date:________________________

Tue Mar 4 15:54:10 EST 2025




© 2023 Byrider Franchising, LLC

[redacted]

[redacted]

**ENTIRE AGREEMENT:** This Contract constitutes the entire agreement and understanding between you and us with respect to the credit transaction described herein, and supersedes any and all prior agreements and understandings, oral or written, with respect to such transaction. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Paragraph headings are for convenient reference only and are not to be interpreted as a complete summary of each paragraph.

**SEVERABILITY:** Except as otherwise provided in the Arbitration Provision above, Buyer agrees that if any term of this Contract is found under the law to be invalid or unenforceable, then such term shall be of no force and effect and shall be severed and the remainder of this Contract shall continue in full force and effect.

**ELECTRONIC SIGNATURE:** If you consented to sign this Contract electronically, you agree that you are signing this Contract in electronic form just as if you had physically signed and delivered a paper document and provided it to us. You are signing this Contract with the present intention of adopting and accepting the method of authentication we selected to show your acceptance of and agreement to the terms of the Contract, just as if you affixed your physical signature to this Contract. You agree that any true and complete physical reproduction of the electronically signed Contract, such as a printed copy, shall be treated the same as or as the legal equivalent of a duplicate of the original electronic agreement.

**NOTICES: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Spanish Translation:**
**La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

**Liability insurance coverage for bodily injury or property damage caused to others is not included in this Contract.**

**Illinois law permits the Buyer to assert all of his/her defenses equally against the sales finance company and the retail seller involved in this transaction.**

Tue Mar 4 15:54:10 EST 2025

Th ______ N/A ______



F4500-IL
© 2023 Byrider Franchising, LLC
Rev. 2/14/2024
[redacted]

[redacted]

**Notice to the buyer.**

1. **Do not sign this agreement before you read it or if it contains any blank spaces.**
2. **You are entitled to an exact copy of the agreement you sign.**
3. **Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge.**

**By signing below, you agree to the terms contained in this Contract and acknowledge that you received a completed copy of the Contract and any attachments to it on the Contract Date listed above.**

**RETAIL INSTALLMENT CONTRACT**

| | | |
|---|---|---|
| TAMEKA MONIQUE RAY<br>Buyer | [signature]<br>Buyer Signature | 3/4/25<br>Date |
| N/A<br>Co-Buyer | N/A<br>Co-Buyer Signature | N/A<br>Date |
| Auto Resources Glendale Heights, Inc. d/b/a Byrider<br>Seller | [signature]<br>Authorized Signature | 3-4-25<br>Date |
| N/A<br>Guarantor | N/A<br>Guarantor Signature | N/A<br>Date |

I hereby guarantee the collection of the above described amount upon failure of the Seller named herein to collect said amount from the Buyer named herein.

NOTICE This Contract and Security Agreement are subject to a security interest in favor of The Huntington National Bank, 106 South Main Street Akron, Ohio 44308 (330 384 7831). No sale or assignment of this Contract and Security Agreement is effective without the express written consent of The Huntington National

Tue Mar 4 15:54:10 EST 2025



F4500-IL
© 2023 Byrider Franchising, LLC
Rev. 2/14/2024
[redacted]

[redacted]

STATE OF ILLINOIS

# CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| KM8JU3AC7DU662655<br>KM8JU3AC7DU662655 | 2013 | HYUNDAI | TUCSON | UTILITY | 25085699281 |

| DATE ISSUED | DATE PRINTED | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED | TYPE TITLE |
|---|---|---|---|---|---|---|
| 03/26/2025 | 03/26/2025 | 121109<br>121109 | | | 03/04/2025<br>USED | ORIGINAL |

MAILING ADDRESS

BYRIDER GDH FINANCE DEPT
800 E NORTH AVE
GLENDALE HEIGHTS IL 60139-3503

LEGEND(S)
ACTUAL MILEAGE

Exhibit B

OWNER(S) NAME AND ADDRESS
TAMEKA MONIQUE RAY
611 23RD AVE
BELLWOOD IL 60104

FIRST LIENHOLDER NAME AND ADDRESS
BYRIDER GDH FINANCE DEPT
800 E NORTH AVE
GLENDALE HEIGHTS IL 60139-3503

SECOND LIENHOLDER NAME AND ADDRESS

RELEASE OF LIEN
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

______ Firm Name By ______ Signature of Authorized Agent Date ______
______ Firm Name By ______ Signature of Authorized Agent Date ______

**NEW LIEN ASSIGNMENT:** The information below must be on an application for title and presented to the Secretary of State.
Secured Party: Address:

**Federal and State law** requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

**ASSIGNMENT OF TITLE**

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ **1. The mileage stated is in excess of its mechanical limits.**
☐ **2. The odometer reading is not the actual mileage.**
**WARNING-ODOMETER DISCREPANCY.**

ODOMETER READING ______ NO TENTHS

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application."

**Signature(s) of Seller(s)** ______
**Printed Name(s) of Seller(s)** ______ DATE OF SALE ______
I am aware of the above odometer certification made by seller.
**Signature(s) of Buyer(s)** ______ **Printed Name** ______

SEAL OF THE STATE OF ILLINOIS AUG. 26th 1818

I Alexi Giannoulias, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any
IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO.
U7733621

Alexi Giannoulias
ALEXI GIANNOULIAS, Secretary of State

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## FIRST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING — NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale | Dealer's Name | Dealer No.

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

## SECOND REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING — NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale | Dealer's Name | Dealer No.

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

## THIRD REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING — NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale | Dealer's Name | Dealer No.

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

## FOURTH REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING — NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale | Dealer's Name | Dealer No.

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

## LAST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING — NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale | Dealer's Name | Dealer No.

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)



DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

JDPOWER

Exhibit C

# 2013 Hyundai Tucson-4 Cyl.

Utility 4D GLS 2WD Values

## Pricing & Values

Prices shown for the used **2013 Hyundai Tucson Utility 4D GLS 2WD** with typical miles are what people paid to buy this vehicle or what people received when trading in this vehicle at a dealer. **Edit options.**

### Buy From Dealer

Prices shown are what people paid including dealer discounts. Taxes and fees (title, registration, license, document, and transportation fees) are not included.

Average Price Paid

**$7,200**



80% of People Paid

**$6,781 - $7,718**

## Estimated Trade-In Value

Prices shown are what people received from a dealer for their trade-in vehicle by condition. **See definitions.**

| | |
|---|---|
| Base Price | $2,750 |
| Mileage and Options | $0 |
| **Low** | **$2,750** |
| Base Price | $3,750 |
| Mileage and Options | $0 |
| **Average** | **$3,750** |
| Base Price | $4,500 |
| Mileage and Options | $0 |
| **High** | **$4,500** |

The values are not for commercial use.
Looking for values for your business? **JD Power Valuation Services** can help.

## 2013 Hyundai Tucson Photos And Videos

Selected Trim: Utility 4D GLS 2WD

All Interior Photos

All Exterior Photos

**See 17 Photos And Videos >**

## Car Loan Calculator

Monthly Payments What Can I Afford

| Car Price | Trade-In Value |
|---|---|
| $7,200 | $0 |

| Interest Rate (%) | Down Payment |
|---|---|
| 3.95 | $0 |

| Sales Tax (%) | Loan Term (Months) |
|---|---|
| California 7.25% | 60 |

**$142.04** per month

Actual price and payments may be different due to local rebates, specials, fees, and credit qualifications. Consult your dealer for actual price, payments, and complete details. **View Disclosures**

## Consumer Ratings

2013 Hyundai Tucson

JDPOWER
**80**
Out of 100

The JD Power 100-Point Score is based on hundreds of thousands of independent and unbiased opinions of verified car owners.

See the **2013 Hyundai Tucson** model page for more details.

## Top Alternatives

| 88 | 87 | 87 | 85 | |
|---|---|---|---|---|
| **2013 Nissan Murano** | **2013 Chevrolet Equinox** | **2013 Porsche Cayenne** | **2013 Toyota Venza** | **2013 GMC T** |
| People are Paying | People are Paying | People are Paying | People are Paying | People are Pay |
| **$4,298 - $6,186** | **$5,931 - $8,408** | **$8,135 - $15,592** | **$7,313 - $10,742** | **$6,144 - $9,1** |